UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY PRIDE,** *et al.*<br><br>      Plaintiffs,<br>*and*<br><br>**WENCESLAUS PROVOST JR.** and **ANGELA PROVOST,** both individually and on behalf of all others similarly situated,<br><br>      Movants,<br><br> v.<br><br>**THE UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*,<br><br>      Defendants. | Civil Action No. 1:23-cv-02292-LLA |

**MOVANTS' MOTION TO CONSOLIDATE CASES**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

      A.    The Provost and Pride Plaintiffs File Putative Class Actions on Behalf of Black Farmers Who Faced Discrimination When Seeking Direct Loans from the USDA. ........................................................................................... 3

      B.    The Provost and Pride Plaintiffs Seek to Relate Both Actions and the USDA Defendants Object. ........................................................................................ 5

      C.    The USDA Defendants Move to Dismiss Both Actions for the Same Reasons. ............................................................................................... 6

      D.    Judge AliKhan Denies the USDA Defendants' Motion to Dismiss the Pride Action's Direct Loan Discrimination Claims—the Very Claims that the USDA Defendants Admit Overlap with Those in the Provost Action. ......................... 7

      E.    The Provost and Pride Actions Are in a Similar Procedural Posture. ............... 8

LEGAL STANDARD ............................................................................................................ 9

ARGUMENT ....................................................................................................................... 10

      I.    There Is a Significant Risk of Inconsistent Rulings on Common Factual and Legal Issues If the Cases Are Not Consolidated. ............................................. 11

      II.    Consolidating Would Decrease the Burden and Expense of Separate Litigation on the Parties and the Court. ....................................................... 13

      III.    Consolidation Would Require a Minimal Extension of the Time Necessary to Resolve the Provost and Pride Actions. ............................................. 14

      IV.    There Is No Risk of Prejudice or Confusion If the Cases Are Consolidated. ........ 15

CONCLUSION .................................................................................................................. 16

RULE 7(m) DUTY TO CONFER .......................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*Chang v. United States*,
  217 F.R.D. 262 (D.D.C. 2003)..................................................................................10, 13, 15

*Devlin* v. *Transportation Commc'n Int'l Union*,
  175 F.3d 121 (2d Cir. 1999)..............................................................................................10

*Dochak v. Polskie Linie Lotnicze LOT S.A.*,
  189 F. Supp. 3d 798 (N.D. Ill. 2016) ................................................................................12

*Hanson v. District of Columbia*,
  257 F.R.D. 19 (D.D.C. 2009)................................................................................10, 11, 15

*Judicial Watch, Inc. v. United States Dept. of Energy*,
  207 F.R.D. 8 (D.D.C. 2002)..............................................................................................11

*Kamkongkaeo v. Islamic Republic of Iran*,
  2021 U.S. Dist. LEXIS 271767 (D.D.C. Nov. 10, 2021) ..................................................11

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*,
  770 F. Supp. 2d 283 (D.D.C. 2011) ..................................................................................10

*New York v. Microsoft Corp.*,
  209 F. Supp. 2d 132 (D.D.C. 2002) ..................................................................................10

*Pride v. U.S. Dep't of Agric.*,
  2024 U.S. Dist. LEXIS 151033 (D.D.C. Aug. 23, 2024) ..............................7, 8, 9, 12, 14

*Royer v. Fed. Bureau of Prisons*,
  292 F.R.D. 60 (D.D.C. 2013)......................................................................................10, 11

*Troupe v. Barbour*,
  2016 U.S. Dist. LEXIS 189218 (S.D. Miss. Dec. 6, 2016) ..............................................11

*Trs. of the IAM Nat'l Pension Fund v. Ohio Magnetics, Inc.*,
  2021 U.S. Dist. LEXIS 133454 (D.D.C. Jul. 16, 2021).....................................................11

### RULES

Federal Rule of Civil Procedure 42(a) ..............................................................................................9

D.D.C. L.R. 40.5(d) ..........................................................................................................................9

### MISCELLANEOUS

Minute Order, *Milton S. Hershey Medical Center v. Becerra*, No. 1:23-cv-01382-
  JDB (D.D.C. Oct. 13, 2023).............................................................................................11

**INTRODUCTION**

Courts routinely consolidate matters arising from the same set of facts, accusing the same defendants of violating the same laws, and seeking the same relief. Doing so ensures that precious judicial and party resources are not wasted and that different judges in the same district are not asked to decide the same issues at the same time. These principles warrant consolidation here.

Movants Angela and Wenceslaus Provost, Jr. (the "Provost Plaintiffs") and Plaintiffs Larry Pride, Victor Lee, Marvin Roddy, Gary Harris, and Chris Anderson (the "Pride Plaintiffs") both filed class action lawsuits regarding the discrimination they faced as Black farmers (respectively, the "Provost Action" and "Pride Action"). Both cases were filed in this district within months of each other. The Provost Action is pending before the Honorable Judge Timothy J. Kelly. The Pride Action is pending before the Honorable Judge Loren AliKhan.

The Provost and Pride Actions share many common factual and legal issues. Both are suits against the United States Department of Agriculture ("USDA") and its Secretary (Thomas J. Vilsack). Both seek to represent a class of Black farmers who have faced discriminatory treatment and suffered discriminatory impact from the USDA's administration of direct loan programs. Both point to (and will seek discovery concerning) specific discriminatory acts by USDA officials, including: refusing and/or discouraging loan applications by Black farmers; denying Black farmers' loan applications at a disproportionate rate; subjecting Black farmers to onerous loan terms not inflicted on White farmers; offering disproportionately less money to Black farmers; and processing Black farmers' loan applications much more slowly; among others. Both point to (and will seek discovery concerning) specific policies and practices that encourage, facilitate, and outright discriminate against Black farmers. Both already point to statistical evidence showing that Black farmers' loans are accepted at a disproportionately lower rate, processed at a

1

disproportionately slower rate, and funded at a disproportionately lower amount. Both also rely on the USDA's repeated admissions of *decades-long* discrimination against Black farmers. Finally, both seek the same remedies: damages, declaratory judgment, and injunctive relief.

While the Pride Action initially included an issue not present in the Provost Action, that is no longer so. On August 23, 2024, Judge AliKhan granted in part the USDA's motion to dismiss the Pride Action. Now, the only remaining issue in that case is whether the USDA discriminated against Black farmers when administering direct loans. That issue is wholly subsumed within the Provost complaint.

Judicial efficiency and party resources would be conserved by consolidating these matters. Justice is not advanced by collecting the same documents, deposing the same witnesses, gathering the same expert testimony, and trying the same case *twice*. Indeed, such parallel, overlapping proceedings entail not only waste but the risk of inconsistent results. Having a single judge address the issue of the USDA's discrimination in administering direct loans would ensure consistency and would significantly decrease the burdens on the parties—especially considering that counsel for the Provost Plaintiffs represent the putative class on a pro bono basis, while Pride counsel does not. Given the significant overlap between the Provost and Pride Actions, the USDA's opposition to consolidation can only be interpreted as a hope that judicial *in*efficiency—two judges deciding the same issues at the same time in the same district—will result in inconsistent (and favorable to the USDA) rulings in at least one of the cases. This is precisely what Federal Rule of Civil Procedure 42(a) seeks to prevent.

The Provost and Pride Actions are both at the beginning stages. Judge AliKhan has already ruled on the USDA's motion to dismiss the Pride Action, and judicial efficiency would not be served by having Judge Kelly separately rule on the same arguments. There is no reason to invite

2

waste and inconsistency by having two judges in the same district ruling on the same issues in cases concerning the same parties at the same time. For these and the reasons set forth below, the Provost Plaintiffs respectfully ask that the Court grant this motion and consolidate the Pride and Provost Actions.

## BACKGROUND

### A. The Provost and Pride Plaintiffs File Putative Class Actions on Behalf of Black Farmers Who Faced Discrimination When Seeking Direct Loans from the USDA.

The Provost Plaintiffs filed this putative class action against the USDA and Secretary Vilsack in his official capacity (collectively, the "USDA Defendants"). ECF No. 1, *Provost v. Vilsack*, No. 1:24-cv-00920-TJK (D.D.C. Mar. 29, 2024) (hereinafter, "*Provost*").[1] The Provost Plaintiffs allege, among other things, that the USDA Defendants violated the Equal Credit Opportunity Act, 15 U.S.C. §§1691 et seq. ("ECOA") and the Due Process Clause of the Fifth Amendment to the U.S. Constitution by executing a policy and practice of discrimination against Black farmers when considering, processing, and granting Farm Service Agency ("FSA") direct and guaranteed loans. ECF No. 1. The Provost Plaintiffs seek declaratory judgment, damages, and injunctive relief. *Id.*, Prayer for Relief. As mentioned above, the case is assigned to Judge Kelly. The Provost Plaintiffs are represented by highly experienced counsel at Wilson Sonsini Goodrich & Rosati, P.C. ("Wilson Sonsini"), a firm that is handling the matter pro bono.[2] *Id.* ¶ 206.

Shortly before the Provost Plaintiffs commenced this action, the Pride Plaintiffs filed a class action against the USDA Defendants, as well as the FSA and Zach Ducheneaux in his official capacity as Administrator of the FSA. The *Pride* complaint similarly alleges violations of the

---

[1] Unless otherwise indicated, all ECF entries are to the docket in the *Provost* case.

[2] Plaintiffs anticipate that the ACLU of Louisiana will soon appear in this matter as co-counsel to Wilson Sonsini. It will also be acting in a pro bono capacity.

ECOA and the Due Process Clause of the Fifth Amendment to the U.S. Constitution arising out of the USDA's administration of overlapping FSA direct loan programs.  ECF No. 1, *Pride v. U.S. Dep't of Agric.*, No. 1:23-cv-02292-LLA (D.D.C. Aug. 8, 2023) (hereinafter, "*Pride*").  The Pride Plaintiffs seek the same relief as the Provost Plaintiffs: a declaratory judgment, damages, and injunctive relief.  *Id.*, Prayer for Relief.  The case is assigned to the Honorable Judge Loren AliKhan.  Based on meet and confer discussions, counsel for the Pride Plaintiffs are not proceeding on a pro bono basis.  Declaration of Ariel C. Green Anaba, filed concurrently herewith, ¶ 3.

Although the allegations concerning the USDA's administration of FSA loan programs overlap significantly, there are some differences between the *Pride* and *Provost* complaints—though, as will be explained, the broader aspects of the *Pride* complaint have been dismissed by Judge AliKhan.

The *Pride* complaint alleges that the USDA Defendants discriminated against Black farmers when administering a market facilitation program.  *Pride*, ECF No. 1 ¶¶ 93, 95.  These allegations are not included in the *Provost* complaint.  *Cf.* ECF No. 1.  Conversely, the *Provost* complaint includes allegations that the USDA discriminated against the Provost Plaintiffs and a putative class of Black farmers when processing and investigating civil rights complaints.  *See id.* ¶¶ 33, 37.  Although the *Pride* complaint points to the USDA's failure to investigate civil rights complaints as evidence of discrimination, *see Pride*, ECF No. 1 ¶¶ 44, 50, it does not appear to allege that the Pride Plaintiffs faced similar discrimination, *cf. id.*

The *Provost* complaint also includes allegations that the USDA Defendants discriminated against Black farmers when administering guaranteed FSA loans, and that they allowed county committee officials to discriminate against Black farmers and abuse their authority in violation of conflict of interest regulations.  *See* ECF No. 1 ¶¶ 27, 32, 204, 220.  These allegations are not

4

present in the *Pride* complaint. *Cf. Pride*, ECF No. 1. Finally, the Provost Action includes additional claims for relief that are not present in the Pride Action, all of which arise from the same factual allegations. *Compare* ECF No. 1 ¶¶ 216-221, 227-232, 237-241 (including Administrative Procedure Act, Mandamus Act, and Freedom of Information Act claims), *with Pride*, ECF No. 1 (not including those claims).

Accordingly, while both the *Pride* and *Provost* complaints have significant overlap when it comes to allegations stemming from discrimination in the administration of FSA direct loan programs, there was not *complete* overlap at the time of filing either complaint.

### B. The Provost and Pride Plaintiffs Seek to Relate Both Actions and the USDA Defendants Object.

Notwithstanding the differences between the Provost and Pride Actions, both the Pride Plaintiffs and Provost Plaintiffs agree the cases are related and so informed the Court. *See* ECF No. 26; *Pride*, ECF No. 39. In particular, both the Provost Action and Pride Action seek to certify classes of Black farmers who have been harmed by the USDA's execution of discriminatory policies and practices against Black farmers when administering FSA direct loans. *Compare* ECF No. 1 ¶ 199 ("All Black farmers whose farm loan applications were delayed and/or denied on account of race within the last five years"), *and id.* ¶ 201 (Black farmers who "had their applications denied or reduced within the last five years based on delinquent USDA debts that the USDA has acknowledged should be forgiven on account of past discrimination"), *with Pride*, ECF No. 1 ¶ 115 (all Black farmers and ranchers who applied for a direct loan that was subject to "unreasonable or unwarranted denial or coerced withdrawal[,] … unreasonable or undue delays or requests during loan application processing[, or] received a loan but with unfavorable terms, such as lower principal amount"). Given the significant overlap between the two proposed classes, the

5

Provost and Pride Plaintiffs filed notices of related cases in accordance with the Local Rules. *See* ECF No. 26; *Pride*, ECF No. 39.

The USDA Defendants objected to relation. Despite an earlier admission that the Provost and Pride Actions have overlapping classes,[3] the USDA Defendants insist that *admitted* overlap does not matter because the individual plaintiffs in both actions are different. *See* ECF No. 27; *Pride*, ECF No. 40.

### C.   **The USDA Defendants Move to Dismiss Both Actions for the Same Reasons.**

On November 27, 2023, the USDA Defendants moved to dismiss the *Pride* complaint for failure to state a claim (the "Pride Motion to Dismiss"). *Pride*, ECF No. 31-1. Among other arguments, the USDA Defendants argued the *Pride* complaint should be dismissed because the Pride Plaintiffs' claims are untimely, the *Pride* complaint fails to allege purposeful discrimination, and the Rule 23 requirements cannot be met because of individualized issues. *Id.* at 11-12, 15-17.

On June 24, 2024, the USDA Defendants filed a partial Motion to Dismiss the *Provost* complaint for failure to state a claim (the "Provost Motion to Dismiss"). ECF No. 25. The Provost Motion to Dismiss rehashes the same arguments in the Pride Motion to Dismiss, except the USDA acknowledged that some ECOA claims were well-pleaded in the *Provost* complaint. *Id.* at 9-10, 16, 21.

---

[3] When moving to dismiss (discussed *infra*), the USDA Defendants agreed the cases had significant overlap, writing:

> [The Provost] Plaintiffs' first proposed class, defined as "All Black farmers whose farm loan applications were delayed and/or denied on account of race within the last five years," largely overlaps with the proposed class in *Pride v. USDA* … proposing to represent a class of farmers who "received inferior service or were denied access to credit" by USDA in the administration of its direct loan program[.]

ECF No. 25 at 22.

6

### D. Judge AliKhan Denies the USDA Defendants' Motion to Dismiss the Pride Action's Direct Loan Discrimination Claims—the Very Claims that the USDA Defendants Admit Overlap with Those in the Provost Action.

On August 23, 2024, Judge AliKhan issued her decision on the Pride Motion to Dismiss. *Pride v. U.S. Dep't of Agric.*, 2024 U.S. Dist. LEXIS 151033 (D.D.C. Aug. 23, 2024). For the most part, Judge AliKhan denied the USDA Defendants' attempt to dismiss the Pride Plaintiffs' ECOA and due process putative class claims based on alleged discrimination in the administration of FSA loans. *See id.* at *21-30. But she dismissed as moot claims of alleged discrimination in the USDA's administration of a market facilitation program that expired years ago. *See id.* at *34. Accordingly, as of now, all remaining claims in the Pride Action fall wholly within those alleged in the Provost Action—*i.e.*, they *all* concern alleged discrimination against Black farmers in the administration of the USDA's direct loan programs.

The Provost Plaintiffs intend to file an amended complaint on or before September 16, 2024, which will maintain allegations of discrimination in the administration of FSA direct and guaranteed loan programs (including allegations the USDA has already acknowledged are well-pleaded). *See* ECF No. 30. If the USDA Defendants file another motion to dismiss on similar grounds, that would require Judge Kelly to address nearly identical arguments raising the same issues of law and arising out of overlapping allegations as were just decided by Judge AliKhan. Indeed, the USDA Defendants previously acknowledged that the Pride and Provost Actions' respective "putative class definitions" concerned "common issues" and that the USDA Defendants' motions to dismiss in both cases were premised on the same legal arguments (*i.e.*, that those class definitions were purportedly inadequate under Rule 23). ECF No. 27 at 2; *see also* ECF No. 25 at 22; *Pride*, ECF No. 40 at 2. These arguments were rejected by Judge AliKhan. *See Pride*, 2024 U.S. Dist. LEXIS 151033, at *22-23.

7

### E. The Provost and Pride Actions Are in a Similar Procedural Posture.

Both the Provost Action and Pride Action are in a similar procedural posture. Deadlines for class certification in both cases are currently stayed. ECF No. 30; *Pride*, 2024 U.S. Dist. LEXIS 151033, at *23. The USDA Defendants have not answered either complaint.[4] There is no scheduling order in either case. There has been no discovery in either action. Discovery is required before either the Provost Plaintiffs or Pride Plaintiffs *could* seek class certification. And the overlap in the discovery necessary to support certification is great.

Both the Provost Plaintiffs and Pride Plaintiffs seek to certify classes of Black farmers who have faced discrimination in the administration of FSA direct loan programs. ECF No. 1 ¶¶ 199-207; *Pride*, ECF No. 1 ¶¶ 113-125. To support their class allegations, both the Provost Plaintiffs and Pride Plaintiffs already relied on statistics and demographic data from the USDA, and both will rely on additional statistics and demographic data to be pursued in discovery to support class certification. Both already rely on the USDA's *public* admissions of discrimination against Black farmers,[5] and both will certainly rely on *private* communications, memoranda, investigations, and other documents concerning discrimination against Black farmers that can only be obtained through discovery. Both already rely on USDA policies that have encouraged and facilitated discrimination against Black farmers for decades,[6] and both will rely on handbooks, instructions, and other policies and practices to be obtained through discovery. Both already rely on testimonials from Black farmers who have faced discrimination,[7] and both will rely on additional

---

[4] Defendants' answer to the remaining claims in the *Pride* complaint is due on or before September 6, 2024. *Pride*, 2024 U.S. Dist. LEXIS 151033, at *35.

[5] ECF No. 1 ¶¶ 38-41; *Pride*, ECF No. 1 ¶¶ 52-77.

[6] ECF No. 1 ¶¶ 214, 220, 224, 231-232, 235; *Pride*, ECF No. 1 ¶¶ 136-139.

[7] ECF No. 1 at 22-89; *Pride*, ECF No. 1 at 40-43.

8

testimonials to be gathered through discovery. Both already rely on statements by USDA officials,[8] and both will undoubtedly seek further discovery and testimony from top USDA officials, including Secretary Vilsack, Administrator Zach Ducheneaux, and other key officials responsible for the policies and practices that lead to rampant discrimination against Black farmers. Finally, both will rely on expert witnesses to crunch the data and support what the USDA has already admitted: longstanding, systemic discrimination against Black farmers. *Pride*, 2024 U.S. Dist. LEXIS 151033, at *6 ("This history—and its devastating impacts on Black farmers—is not in dispute.").

Although the Provost Action includes additional issues than are present in the Pride Action, there is considerable overlap with respect to allegations of the USDA's administration of FSA direct loan programs. Indeed, allegations that the USDA has discriminated in the administration of FSA direct loan programs are the *only* claims that remain in the Pride Action—in other words, the Pride Action is entirely subsumed within the Provost Action. To preserve judicial economy and party resources, the Provost Plaintiffs hereby move to consolidate their action with the Pride Action before the Honorable Judge Loren AliKhan.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may ... consolidate the actions[.]" Fed. R. Civ. P. 42(a). The Local Rules of this Court require any motion to consolidate to be heard and decided by the judge to whom the earlier-numbered case is assigned. D.D.C. L.R. 40.5(d).

"Consolidation of actions under Rule 42(a) is 'a valuable and important tool of judicial administration.'" *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009) (quoting

---

[8] ECF No. 1 ¶¶ 18(c), 41, 204, 224; *Pride*, ECF No. 1 ¶¶ 53, 54, 59, 61, 79, 80.

9

*Devlin* v. *Transportation Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)). It helps to "relieve[] the parties and the Court of the burden of duplicative pleadings and [c]ourt orders." *Id.* (quoting *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 148 (D.D.C. 2002)).

Courts have discretion to determine whether consolidation is appropriate and, when doing so, consider both equity and judicial economy. *See Hanson*, 257 F.R.D. at 21. If "'savings of expense and gains of efficiency can be accomplished without sacrifice of justice,' a court may find the actions merit consolidation." *Id.* (citation omitted). In short, "courts weigh considerations of convenience and economy against considerations of confusion and prejudice." *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003).

"In deciding whether to consolidate, courts must 'weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated.'" *Royer v. Fed. Bureau of Prisons*, 292 F.R.D. 60, 61 (D.D.C. 2013) (quoting *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011)). "[C]onsolidation is particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts." *Hanson*, 257 F.R.D. at 21.

## ARGUMENT

Consolidation is warranted. Both cases involve the same defendants and overlapping proposed classes. The cases arise from the same series of events or facts and are likely to involve substantially the same witnesses. *See Hanson*, 257 F.R.D. at 21. Consolidation would result in considerable cost savings to the parties, as well as significant judicial economy for this Court, without any sacrifice of justice. Courts within this District routinely consolidate actions involving

10

common questions of law or fact. *See, e.g.*, *Royer*, 292 F.R.D. at 62 (granting motion to consolidate where plaintiff's claims arose "from the same general facts, involve[d] the same parties, and [were] generally at the same stage of litigation"); Minute Order, *Milton S. Hershey Medical Center v. Becerra*, No. 1:23-cv-01382-JDB (D.D.C. Oct. 13, 2023) (granting motion to consolidate where the court found that "the cases involve common question[s] of law" (internal quotations omitted)); *Kamkongkaeo v. Islamic Republic of Iran*, 2021 U.S. Dist. LEXIS 271767, at *2 (D.D.C. Nov. 10, 2021) (granting motion to consolidate where the cases involved related plaintiffs, the same defendant, and arose from the same claims and events). Such circumstances exist here.

**I.     THERE IS A SIGNIFICANT RISK OF INCONSISTENT RULINGS ON COMMON FACTUAL AND LEGAL ISSUES IF THE CASES ARE NOT CONSOLIDATED.**

A primary goal of consolidation is "preventing potentially inconsistent rulings[.]" *Judicial Watch, Inc. v. United States Dept. of Energy*, 207 F.R.D. 8, 9 (D.D.C. 2002). As one court concluded, "[e]ven if consolidation did pose a risk of prejudice or confusion, the need to avoid inconsistent rulings outweighs such risk," especially where "[b]oth cases involve demands for broad injunctive relief" and "inconsistent rulings could lead to disparate [government] obligations[.]" *Troupe v. Barbour*, 2016 U.S. Dist. LEXIS 189218, at *8-9 (S.D. Miss. Dec. 6, 2016). Such concerns are implicated here.

Given the significant factual and legal overlap between the Provost and Pride Actions, there is a heightened risk of inconsistent rulings if the cases are not consolidated. Both actions present identical questions of fact, including, but not limited to:

- Does the USDA discourage Black farmers from applying for direct loans when compared to treatment of and/or outreach to other races?

- Does the USDA delay processing Black farmers' loans when compared to processing times for other races?

- Does the USDA disproportionately deny Black farmers' loans when compared to applicants of other races?

11

- Does the USDA offer worse loan terms to Black farmers as opposed to applicants of other races?

- Does the USDA offer disproportionately less money to Black farmers when compared to applicants of other races?

- Are the USDA's policies and procedures designed to permit and/or facilitate discrimination against Black farmers?

Similarly, both the Provost and Pride Actions present identical questions of law, including, but not limited to:

- Should the class allegations be stricken under Rule 23(f) for failure to meet Rule 23's requirements?

- Should a class of Black farmers who have faced discrimination when seeking a direct loan be certified?

- Do equitable exceptions to the ECOA statute of limitations apply for discriminatory acts suffered earlier than five years ago?

- What discovery into internal USDA policies, practices, and communications should be permitted?

- Should the Court grant injunctive relief to change the policies and procedures that have led to discrimination against Black farmers that the USDA *acknowledged* as recently as 2021?

Judge AliKhan already answered the first legal question with a definitive "no." *See Pride*, 2024 U.S. Dist. LEXIS 151033, at *23 (concluding "whether a plaintiff has satisfied the requirements under Rule 23 for a class action is not an appropriate inquiry at the motion to dismiss stage") (quoting *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 809 (N.D. Ill. 2016)).  The USDA Defendants' resistance to consolidation can only be interpreted as a desire for Judge Kelly to reach an inconsistent ruling.  But "[t]he ill that Rule 42(a) seeks to avoid is the risk of inconsistent rulings in the cases subject to consolidation, and that is the risk that consolidation will avoid here." *Trs. of the IAM Nat'l Pension Fund v. Ohio Magnetics, Inc.*, 2021 U.S. Dist. LEXIS 133454, at *9 (D.D.C. Jul. 16, 2021).

This pattern of one decision trailing (and, potentially, conflicting with) another will only continue if the cases are not consolidated, with Judge AliKhan rendering decisions on discovery, class certification, summary judgment, *Daubert* motions, motions in limine, trial, and post-trial motions slightly ahead of Judge Kelly's decisions on the same issues in the same district at the same time. The Court neither must, nor should, engage in such judicial inefficiency or invite such a risk of inconsistent rulings. "Far from rendering … litigation more unwieldy, consolidation … increase[s] efficiency by reducing the possibility of duplicative discovery and by achieving judicial economy in the adjudication of potentially dispositive motions involving similar material facts, a single group of actors present during the events at issue, and common questions of law." *Chang*, 217 F.R.D. at 266-67. To avoid the ill of potentially inconsistent rulings, consolidation is warranted here.

## II. CONSOLIDATING WOULD DECREASE THE BURDEN AND EXPENSE OF SEPARATE LITIGATION ON THE PARTIES AND THE COURT.

Significant burden and expense can be spared through consolidation. Both the Provost and Pride Plaintiffs will seek the same documents and written discovery regarding the policies and procedures surrounding direct loans, investigations of discrimination complaints,[9] demographic data for loan applicants and recipients, the time it took to process the applications, and the terms of each loan, among other things. *See supra* at 8-9. Deposition of the USDA Defendants in both the Provost and Pride Actions will overlap significantly—if not entirely. And, because both the Provost Plaintiffs and Pride Plaintiffs seek to certify classes of Black farmers, there likely will be significant overlap between plaintiff-side witnesses as well. Finally, both at the class certification

---

[9] Again, although the Pride Action does not appear to include allegations that the Pride Plaintiffs faced discrimination in the investigation of civil rights complaints against the USDA, *supra* at 4, the *Pride* complaint *does* point to evidence of discrimination in the processing of civil rights complaints to support its overall claims of discrimination, *see Pride*, ECF No. 1 ¶¶ 44, 50.

13

and the merits stage, expert witness testimony will be required. It makes no sense to have multiple experts prepare reports, offer testimony, and eventually testify about the same issues within the same district at the same time. Consolidation would greatly decrease the burden on both the Court *and* the parties. It would also maximize recovery for the class.

This is especially true considering that counsel for the Provost Plaintiffs are proceeding on a pro bono basis, whereas counsel for the Pride Plaintiffs are not. Any potential relief to the class risks being diminished by the fees incurred by the Pride Plaintiffs' counsel separately litigating these issues. The same is not true of the Provost Action. Consolidating the Provost and Pride Actions would allow the Pride Plaintiffs to benefit from the pro bono representation offered by counsel in the Provost Action *before* certification. For this additional reason, consolidation of the two cases has the significant potential of decreasing the burden on the existing parties and any future, certified class.

Finally, the parties have fully briefed the USDA's pleadings challenge to the Pride Action, which Judge AliKhan has now resolved. *See Pride*, 2024 U.S. Dist. LEXIS 151033. If not consolidated, Judge Kelly will have to duplicate that work, either to merely reach the same result (making that work purely inefficient) or, worse, to reach a different result (thereby creating the inconsistent rulings that consolidation is meant to avoid). Consolidation avoids this judicial inefficiency.

### III. CONSOLIDATION WOULD REQUIRE MINIMAL EXTENSION OF THE TIME NECESSARY TO RESOLVE THE PROVOST AND PRIDE ACTIONS.

Both the Provost and Pride Actions are at the same stage of litigation—pre-answer and pre-discovery. If consolidated, the USDA Defendants will have to consider whether to pursue, in a new motion directed toward the Provost Plaintiffs' First Amended Complaint (to be filed September 16, 2024), arguments that already failed before Judge AliKhan. Even if the USDA

14

Defendants take a second bite at the proverbial apple, any delay would be minimal, and discovery could proceed shortly thereafter. As the Court concluded in *Hanson*, "any delay caused to the plaintiffs [from resolution of additional claims] would not be significant, as both cases are still in their nascent stages." *Hanson*, 257 F.R.D. at 22. Thus, even if the Pride Plaintiffs had to wait a few additional months to start class discovery, that minimal delay is far outweighed by the efficiencies and cost savings to be achieved through consolidation, especially considering that counsel for the Provost Plaintiffs have offered their services pro bono.

## IV. THERE IS NO RISK OF PREJUDICE OR CONFUSION IF THE CASES ARE CONSOLIDATED.

Consolidation would *decrease* the risk of prejudice and confusion. Although the Pride Action was filed a few months earlier and the Provost Action includes claims not present in the Pride Action, consolidation would capture any statute of limitations differences between the two cases. *See Chang*, 217 F.R.D. at 266. Moreover, if consolidated—and, especially, if combined into *one* action wherein the Provost Plaintiffs' counsel served as lead counsel—the Pride Plaintiffs not only would benefit from pro bono representation, but they also would benefit from the additional claims asserted in the Provost Action, including under the Administrative Procedure and Mandamus Acts.

If *not* consolidated, the Provost and Pride Actions would proceed simultaneously, both reaching out to potential class members about the same thing: one class pursuing fewer claims for profit, the other pursuing more claims pro bono. The risk of potential confusion to class members is great. Consolidation avoids these risks and forces a decision as to who is best suited to represent the interests of the class.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this Motion and consolidate actions 1:24-cv-00920 and 1:23-cv-02292.

## **RULE 7(M) DUTY TO CONFER**

On August 23, 2024, counsel for the Provost Plaintiffs sent emails to counsel for the Provost Defendants (Vilsack, et al.) to determine if there was any opposition to this Motion to Consolidate. Counsel for Defendants Vilsack, et al. oppose the motion to consolidate. Also on August 23, 2024, counsel for the Provost Plaintiffs sent emails to counsel for the Pride Plaintiffs to determine if they consented to or opposed this Motion to Consolidate Cases. Counsel for the Pride Plaintiffs indicated that they would "likely" object "to the filing of a consolidated complaint."

| | |
|---|---|
| Dated: August 26, 2024 | Respectfully Submitted,<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br><br>*/s/ John B. Kenney*<br>JOHN B. KENNEY<br><br>Robin S. Crauthers (D.C. Bar No. 1659397)<br>John B. Kenney (D.C. Bar No. 1520911)<br>1700 K Street, NW<br>Washington, DC 20006<br>Telephone: (202) 973-8800<br>rcrauthers@wsgr.com<br>jkenney@wsgr.com<br><br>Ariel C. Green Anaba (*pro hac vice* forthcoming)<br>Luis Li (*pro hac vice* forthcoming)<br>Paul Watford (*pro hac vice* forthcoming)<br>Mark Yohalem (*pro hac vice* forthcoming)<br>Matthew Macdonald (*pro hac vice* forthcoming)<br>953 East Third Street, Suite 100<br>Los Angeles, CA 90013 |

Telephone: (323) 210-2900
aanaba@wsgr.com
luis.li@wsgr.com
pwatford@wsgr.com
mark.yohalem@wsgr.com
matthew.macdonald@wsgr.com

Deno Himonas (*pro hac vice* forthcoming)
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, UT  84101-1560
Telephone: (801) 401-8520
dhimonas@wsgr.com

Luke Liss (*pro hac vice* forthcoming)
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
lliss@wsgr.com

**Attorneys for Movants**
Wenceslaus Provost Jr. and Angela Provost