## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY PRIDE, et al.,

       *Plaintiffs*,

   v.

U.S. DEPARTMENT OF AGRICULTURE,
et al.,

       *Defendants.*

No. 1:23-cv-02292-LLA

### UPDATED JOINT REPORT UNDER LCvR 16.3(d) and FRCP 26(f)(2)

Pursuant to the Court's instructions provided at the Initial Scheduling Conference held on February 13, 2025, and minute order entered that same day, the parties jointly submit this updated report outlining their discovery plan and stating their positions on the topics set forth in Local Civil Rule 16.3(c) and Federal Rule of Civil Procedure 26(f)(3).

The parties have followed the Court's directive to confer and resolve, to the best of their ability, issues regarding the case schedule and limits on discovery for the pre-class certification phase of this action. The parties have reached agreement on a case schedule to govern proceedings through resolution of class certification, as set forth herein. The parties have also made substantial progress on negotiating quantitative and qualitative limits on discovery for this phase. However, disputes about the scope of discovery remain, as set forth below.

### I. Statement of the Case & Jurisdiction

***Plaintiffs' Statement.*** Plaintiffs respectfully refer to and incorporate their statement in Section I of the parties' previous Joint 26(f) Report (ECF 55) as it recites the claims and procedural history in this matter up until the Initial Scheduling Conference on February 13, 2025. On that

date, the Court directed the parties to confer, narrow areas of disagreement on the case schedule and discovery, and file a supplemental report. The parties have met and conferred multiple times regarding the case schedule and pre-class certification discovery and have reached agreement on the issues specified below, with some discovery issues remaining in dispute.

**Defendants' Statement.**  The parties filed a Joint 26(f) Report on November 8, 2024, and Defendants respectfully refer the Court to their Statement of the Case regarding the claims and defenses at issue here.  *See* Initial Joint 26(f) Report, ECF No. 48.  In that report, Defendants took the position that the parties should refrain from commencing discovery prior to the Court's resolution of the *Provost* plaintiffs' motion to consolidate.  *Id.* at 4–5.  Plaintiffs nonetheless propounded several sets of discovery (39 requests for production, 9 compound interrogatories, and 46 requests for admission), and Defendants sought a stay of discovery and protective order from the Court in response.  Defs.' Mot. to Stay Discovery, ECF No. 49.  Thereafter, the Court (1) denied the motion to consolidate, ECF No. 52, (2) denied Defendants' motion to stay discovery as moot, (3) ordered the parties to file an updated Joint 26(f) Report by January 13, 2025, and (4) set a Rule 16 conference for February 13, 2025.  The parties filed an updated Joint 26(f) Report on January 13, 2025.  *See* ECF No. 55.

During that intervening period, Plaintiffs continued to seek responses to their previously served discovery requests before the Court's Rule 16 conference.  Plaintiffs did so despite Defendants' concerns that the parties had (at the time) an unresolved dispute over whether discovery would proceed in phases and accordingly be limited prior to class certification in the first instance.  Indeed, Defendants, in the parties' January 9 conference, highlighted the risk that Plaintiffs' propounded requests might fall outside the scope of phased class discovery and requested that Plaintiffs agree to a response deadline that fell after the Rule 16 conference.

Plaintiffs responded that neither party planned to propose discovery limits below the number of requests Plaintiffs had already propounded. Thus, Defendants agreed to provide responses, in part, based on their understanding that already served discovery requests would count towards the limits each party had proposed in the then forthcoming Joint 26(f) Report.

Per the parties' agreement, Defendants served their responses and objections to more than 94 unique discovery requests on February 10, 2025. Shortly thereafter, on February 13, 2025, the Court indicated, during the Rule 16 conference, that discovery would be phased and that pre-certification discovery should be targeted at class-related issues under Rule 23, to enable the Court to rule on Plaintiffs' forthcoming motion for class certification. Tr. of Hr'g (Feb. 13, 2025) at 4:6–:12, 32:9–33:18. The Court additionally indicated that Plaintiffs' initial requests were likely overly broad for this pre-certification stage. At the conclusion of the conference, the Court instructed the parties to file another 26(f) Report by February 28, 2025, and come to an agreement on the scope of discovery prior to class certification, consistent with the Court's guidance at the conference.

## II. Matters Discussed by the Parties Pursuant to LCvR 16.3(c)

(1) **Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.**

*Plaintiffs' Statement.* Plaintiffs partially prevailed on Defendants' motion to dismiss, and accordingly, Plaintiffs do not believe that the case is likely to be disposed of by dispositive motion. Because the Court has already ruled on the motion to dismiss, there is no need to delay discovery or to await further decisions. However, the parties have agreed, consistent with the Court's guidance at the Initial Scheduling Conference on February 13, that discovery at this stage should be limited to issues regarding class certification.

*Defendants' Statement.* Defendants anticipate that the case may be disposed of under Federal Rule of Civil Procedure 56 (and/or the resolution of Plaintiffs' anticipated motion for class certification).

(2)    **The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

*Parties' Statement.* Consistent with the Court's guidance at the Initial Scheduling Conference held on February 13, 2025, the parties agree that the deadline for Plaintiffs to amend pleadings should be established after the Court rules on class certification.

*Plaintiffs' Statement.* At this stage in the case, Plaintiffs are not aware of any factual or legal issues that can be agreed upon or narrowed. Plaintiffs believe that post-discovery summary judgment motions, if any, provide the next realistic opportunity to narrow the issues.

*Defendants' Statement.* Defendants believe that class certification provides the next realistic opportunity to narrow the issues.

(3)    **Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

*Parties' Statement.* The parties do not agree to consent to assigning the case to a magistrate judge. However, as discussed below (#5), at the appropriate time, the parties may be interested in potentially mediating the case before a magistrate judge of this Court.

(4)    **Whether there is a realistic possibility of settling the case.**

*Parties' Statement.* The parties have not yet engaged in settlement discussions. The parties believe that settlement discussions are unlikely to be productive at this time.

(5)    **Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients. In assessing the above, counsel shall consider:**
   (i)    **The client's goals in bringing or defending the litigation;**
   (ii)    **Whether settlement talks have already occurred and, if so, why they did not produce an agreement;**
   (iii)    **The point during the litigation when ADR would be most appropriate, with special consideration given to:**
      (aa)  **Whether ADR should take place after the informal exchange or production through discovery of specific items of information; and**
      (bb)  **Whether ADR should take place before or after the judicial resolution of key legal issues;**
   (iv)    **Whether the parties would benefit from a neutral evaluation of their case, which could include suggestions regarding the focus of discovery, the legal merits of the claim, an assessment of damages and/or the potential settlement value of the case; and**

> **(v)**     **Whether cost savings or any other practical advantages would flow from a stay of discovery or other pre-trial proceedings while an ADR process is pending.**
>
> *Parties' Statement.*   The parties have discussed the potential for ADR.  The parties have agreed to notify the Court if settlement discussions occur and progress to the point where they believe ADR would be beneficial.

**(6)**     **Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

> *Parties' Statement.*   As reflected in the parties' respective statements in Section II(1) above, the parties disagree in principle about whether this case may ultimately be resolved by motions for summary judgment.  The parties nonetheless agree that they should be permitted to file a joint status report within 50 days after the issuance of a class certification decision with an update on proposed proceedings, including any potential dispositive briefing schedules.

**(7)**     **Whether the parties should stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

> *Parties' Statement.*   The parties have exchanged initial disclosures without any changes to scope or form.  As part of their initial disclosures, Defendants produced Plaintiffs' loan files that were within Defendants' possession.

**(8)**     **The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

The parties filed their joint motion for protective order on January 30, 2025. (ECF 56). The Court granted that motion on February 3, 2025. (ECF 58).

**(a)**     **Agreed Proposed Scheduling Order**

The parties have agreed on the following proposed case schedule, including dates for completion of discovery and depositions:

- **August 11, 2025:** Substantial completion of production of documents and responses for class-certification written discovery;

- **August 11, 2025:** Commencement of depositions.

- **November 14, 2025:** Plaintiffs file initial Rule 23 brief with class expert disclosures.

- **December 12, 2025:** Deadline for depositions of Plaintiffs' initial class experts.

- **March 27, 2026:** Defendants file opposition to Rule 23 brief with class expert disclosures.

- **April 17, 2026:** Deadline for depositions of Defendants' class experts.

- **June 10, 2026:** Plaintiffs file reply to Rule 23 brief along with rebuttal class expert disclosures.

- Parties to file Joint Status Report addressing deadlines for further proceedings (including deadline to amend pleadings and add parties, completion of merits discovery, dispositive motions, pretrial conferences, and trial) no later than 50 days after issuance of the Court's decision on class certification.

This agreed proposed case schedule shall remain operative, subject to amendment for good cause pursuant to LCvR 16.4(a).

**(b)   Quantitative Limits on Class Discovery**

The parties have agreed to the following quantitative limits on discovery through resolution of class certification:

*Number of Fact Depositions.* The parties have reached agreement that each side may take up to 12 fact depositions prior to Plaintiffs filing their motion for class certification. If, after resolution of class certification, the Court determines that more discovery is necessary, the parties agree that additional fact depositions may be appropriate at that point. The parties would negotiate a reasonable number of additional fact depositions at that time based on how the case has developed.

*Number of RFPs.* The parties have reached agreement that each side may propound no more than 50 requests for production in advance of class certification briefing. Plaintiffs may jointly serve requests on Defendants. Defendants may jointly serve requests for production on Plaintiffs. Requests for production may be served on individual parties on discrete issues. The 39 requests for production that Plaintiffs previously served on Defendants count towards that limit.

*Number of RFAs.* The parties have reached agreement that each side may propound no more than 50 requests for admission in advance of class certification briefing. Plaintiffs may jointly serve requests on Defendants. Defendants may jointly serve requests on

Plaintiffs.  The 46 requests for admission that Plaintiffs previously served on Defendants count towards that limit.

*Number of ROGs.*  The parties have reached agreement that Plaintiffs may jointly serve 20 additional interrogatories on Defendants, exclusive of the 15 interrogatories[1] that Plaintiffs have already served (for a total of 35 interrogatories in advance of class certification briefing).  Defendants may jointly serve 10 interrogatories on each plaintiff named in the Complaint.

**(c)    Scope of Subject Matter for Discovery**

***Plaintiffs' Statement:***

Following the February 13 scheduling conference, Plaintiffs provided a proposed discovery plan to Defendants with the intent to significantly narrow and focus discovery prior to class certification. Plaintiffs' proposal involves three components: 1) production of structured data, 2) use of three search strings for a limited number of custodians, and 3) limited "go-get" collections for specific documents.

The parties are continuing to negotiate discovery. Regarding geographic scope, Plaintiffs have offered to limit document collection from local offices to Alabama, Arkansas, and Mississippi, and Plaintiffs have further proposed limiting the burden through a targeted selection of custodians. Regarding time limitations, Plaintiffs have offered to limit document collection other than structured data to January 1, 2017 to present (or an agreed-upon cutoff date). Plaintiffs are hopeful that agreement can be reached on these issues.

While the parties have made progress on several fronts, the parties will likely reach impasse on several issues that Plaintiffs view as critical to class certification. Issues likely necessitating motion practice include: 1) relevance of direct loan data prior to 2017 and to the present, 2) relevance of guaranteed loan data, 3) relevance of reliance materials supporting the expert reports of William Cobb and Dr. Alicia Robb in *Miller v. Vilsack*, and 4) relevance of data showing Defendants' determinations in the DFAP and ARPA programs and manuals or guidance materials directing those determinations. After substantially narrowing exactly what they are requesting on these topics (primarily limiting their requests to structured data and go-get collections), Plaintiffs have consistently requested information regarding the burden involved in producing responsive information. Defendants are resting on relevancy objections for all foregoing categories. While Plaintiffs are open to adjusting the time period for structured data based on burden, Defendants have not claimed any burden in producing additional data, and, to the contrary, Defendants relied on extensive historical data in *Miller v. Vilsack*. Plaintiffs anticipate detailing the relevance and utility of additional

---

[1] Plaintiffs have already served 9 interrogatories.  After Defendants objected on the grounds that several of the interrogatories contained compound requests, the parties agreed that the 9 interrogatories would "count" as 15 interrogatories.

data in a discovery motion, including the key role of such data analysis for class certification.

Plaintiffs intend to file a motion to ensure an opportunity to explain and substantiate the relevance of the information they seek for class certification. Plaintiffs do not believe the Rule 26(f) process is the appropriate vehicle for resolving fundamental discovery questions that need a factual record and full consideration. It would be highly prejudicial for the Court to resolve issues regarding the scope of class certification discovery through a Rule 26(f) report, without argument and briefing on the issues. Accordingly, Plaintiffs will address Defendants' arguments in any necessary motion.

***Defendants' Statement:***

At the Initial Scheduling Conference on February 13, 2025, the Court directed the parties to submit an updated report and to "be as specific as possible with your proposal[s] whether it's time limited, whether it's geographically limited, whether it's county versus state." Tr. at 36:7–10. Pursuant to the Court's direction, the parties have conferred, and Defendants have identified the areas of agreement, continued negotiation, and specific disputes, as set forth below. Defendants would appreciate the Court's further input on the proper scope of discovery in the action, and it is Defendants' position that any motion to compel based on Plaintiffs' prior requests, if filed before the Court has weighed in on the scope of discovery and the parties have had the opportunity to further confer, would be premature. *See supra*, Part II.8(c), Plaintiffs' Statement.

As an initial matter, Plaintiffs' proposed discovery plan, while helpful, was focused on negotiating the already-served RFPs. The parties have had productive discussions about those RFPs, and Plaintiffs' materials have provided a helpful starting point for negotiating some of these parameters for pre-class certification discovery. That being said, Defendants have not understood Plaintiffs to be proposing generally applicable geographic limitations (as they still appear to be seeking search terms across 10 custodial positions, not persons, nationwide), and they have not clarified how those purported limits would apply to Plaintiffs' Headquarters-oriented requests.[2]

***Discovery Sought by Plaintiffs that Defendants Have Agreed to Produce.*** While the parties agree that further work on negotiating custodians, ESI searches, and hard pulls is needed, Defendants have agreed—subject to those negotiations and categorical exclusions detailed below, including *e.g.*, a generally applicable temporal limitation— to produce the following categories of documents and structured data.

- Structured loan data related to USDA's direct loan programs (more than 200,000 rows of data);

---

[2] Defendants further note that the three string-cites that Plaintiffs have proposed for ESI searches applicable to the U.S. Secretary of Agriculture, the Administrator of the Farm Service Agency, and an unidentified number of additional custodians are themselves overly broad.

- Findings of discrimination toward Black farmers by USDA's Office of the Assistant Secretary for Civil Rights ("OASCR") related to USDA's direct loan program;
- Policy manuals, guidance documents, handbooks or other agency policies, procedures and/or training materials governing administration of USDA's direct loan program (approx. 100 different handbooks and related materials, plus additional training materials);
- Final reports, findings, and/or memoranda regarding disparities in loan approval, withdrawal, and rejection rates between Black and white farmers in connection with USDA's direct loan program, subject to reasonable custodial searches, if any;
- USDA's Report of Civil Rights Complaints, Resolutions, and Actions for Fiscal Years 2018, 2019, 2020, 2021, 2022, 2023, and 2024; Defendants have already directed Plaintiffs to publicly available data at https://www.usda.gov/regstats;
- Secretary Vilsack's testimony and/or statements to the House Committee on Agriculture on March 25, 2021, and reasonably identifiable related materials;
- Certain organizational charts; and
- Each Plaintiff's complete loan file within USDA's possession.[3]

**Points of continued negotiation.**  After a productive initial conferral, the parties have agreed to take a hard look at their respective positions on discovery relating to the Equity Commission.  And, as indicated above, the parties anticipate continuing to negotiate potential ESI searches with respect to Plaintiffs' previously served RFPs.

**Points of disagreement.**  The parties do, however, have several fundamental disagreements as to the scope of discovery that persist, which are listed and discussed in further detail below:

- Time period limitations
- Geographic limitations
- USDA's guaranteed loan program
- Discrimination Financial Assistance Program
- Information relating to the American Rescue Plan Act of 2021
- Discovery relating to the *Miller v. Vilsack* litigation

For the reasons set forth below, Defendants request that the Court tailor discovery by imposing a temporal limitation anchored around the five-year statute of limitations, providing for one additional year on either side, *i.e.*, 2017-2024, and exclude discovery relating to the guaranteed loan program, the Discrimination Financial Assistance Program ("DFAP"), the American Rescue Plan Act ("ARPA") are related litigation, and county commissions.

---

[3] These categories largely map on to Plaintiffs' RFP Nos. 1, 5, 10, 16, 26, and 38.  Plaintiffs have also represented that they will withdraw RFP Nos. 17.

**(1) *Temporal limitations.*** Courts in this district have repeatedly recognized that they "should exercise discretion in discrimination cases by placing reasonable limits on the time periods for which discovery must be produced[.]" *Kargbo v. AMTRAK*, Civil Action No. 15-698, 2016 U.S. Dist. LEXIS 201525 (D.D.C. 2016) (citations and internal quotations omitted). This has ranged from as little as two years to three, four, or five years in various cases. *See, e.g.*, *Mitchell v. Amtrack*, 208 F.R.D. at 459–60 (D.D.C. 2002) (applying a two-year time period and limiting discovery into other discrimination claims to those in which "the complainant claimed discrimination on the same basis or bases as the plaintiff in [that] case"); *Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943-DLF-ZMF, 2021 U.S. Dist. LEXIS 61704, at *12 (D.D.C. Mar. 31, 2021) (applying a two-year discovery timeframe); *Glenn v. Williams*, 209 F.R.D. 279, 282 (D.D.C. 2002) (applying a three-year time period limitation on discovery); *Lee v. Pub. Co. Acct. Oversight Bd.*, Civil Action No. 21-1006 (CKK), 2023 U.S. Dist. LEXIS 111029, at *16 (D.D.C. June 28, 2023) (applying a four-year time period limitation on discovery); *United States EEOC v. George Wash. Univ.*, No. 17-cv-1978 (CKK/GMH), 2020 U.S. Dist. LEXIS 112933, at *55 (D.D.C. June 26, 2020) (applying a 5-year time period limitation). Ten years has been described as "inordinate," even in cases where the plaintiff seeks to establish a pattern of discrimination theory. *Glenn*, 209 F.R.D. at 282. And here, Plaintiffs' claims are subject to a five-year statute of limitations, from 2018-2023.

Although Plaintiffs have proposed limiting several of their previously propounded discovery requests to an ongoing time period of 2017-present, that limitation, at this juncture, does not apply to Plaintiffs' requests for structured data pulls for USDA's direct and guaranteed loan programs (Plaintiffs' RFP Nos. 1 and 2).[4] Plaintiffs' request for 25 years' worth of loan data finds no support in any other statutory discrimination claims in this District. By contrast, Defendants have conveyed yet another compromise by agreeing to produce structured data from 2017-2024, *i.e.*, one year before and one year after the relevant limitations period, for a total of seven years—even though they believe that the five-year statute of limitations is the appropriate time period for ECOA claims. That additional compromise is more than reasonable, as such a proposal goes beyond the statute of limitations and the time period limits that most courts have approved. Indeed, the Court has already indicated that Plaintiffs' unbounded requests for more than two decades worth of data may be overbroad. *See* Tr. 14:8-12 ("But it seems like you're also asking for discovery going well beyond the period of the statute of limitations that's relevant to this case.").

At bottom, Defendants maintain that the statute of limitations serves as the relevant time period for Plaintiffs' ECOA claims. However, in the spirit of compromise and

---

[4] Although Plaintiffs have indicated that they may be willing to consider a slightly narrowed time period for structured data, they have not yet provided a counter proposal, and early conferrals indicate that the parties may be far apart on this issue and would appreciate guidance from the Court.

for purposes of consistency, Defendants would propose that the Court impose a general time period limitation of 2017-2024 across all discovery requests.[5]

**(2) Geographic Limitations.**    At the Initial Scheduling Conference, the Court recommended that the parties agree to geographic limitations for the purpose of pre-class certification discovery.  After numerous discussions, Defendants are still unclear how Plaintiffs' proposal that certain unspecified discovery requests be limited to Alabama, Arkansas, and Mississippi will apply in practice, particularly given that Plaintiffs have not specified what additional class discovery they might seek, and because many of their requests appear to avoid any geographical limitation by focusing on nationwide programs and Headquarters-level officials. Defendants maintain that class discovery should be tailored to a reasonable geographic limitation.

**(3) Programmatic areas of dispute.**    The parties further disagree about whether discovery related to the guaranteed loan program, county committees, DFAP, and ARPA are relevant and proportional to this action.  It is Defendants' position that discovery requests related to these programs seek irrelevant information, serve as a backdoor to discovery far beyond any reasonable temporal or geographic limitations, and vitiate any of the efficiencies that were achieved when the Court denied consolidation with the *Provost* matter.  Defendants' position on why these categories of discovery should be excluded are described in further detail below.

*(a) Guaranteed loan program.*    Plaintiffs continue to press their requests for discovery into USDA's guaranteed loan program.  But as Plaintiffs have already acknowledged, this case only concerns USDA's direct loan program, not its guaranteed loan program, so the requested discovery is not relevant.  *See* Pride Opp. to Mot. to Consolidate at 3, ECF No. 45 ("By contrast to the more narrowly-scoped *Pride* complaint, the *Provost* complaint challenges USDA conduct in both the USDA direct and guaranteed loan programs"), and 9 ("[T]he class relief sought by Plaintiffs in this action concerns **only** the USDA direct loan program[.]") (emphasis in original).  The Court also recognized this material limitation on the *Pride* litigation when it denied consolidation with the *Provost* matter.  Order at 5, ECF No. 52 ("While the *Provost* plaintiffs also advance such a claim, it is but one of many claims, including that the USDA violated the ECOA in administering its Guaranteed Loan Program. . . . In light

---

[5] Defendants note that Plaintiffs' proposal to extend the temporal limitation applicable to their requests through the "present" provides a never-ending window of discovery that is both unworkable and disproportionate to the needs of this case.  *See Nuskey v. Lambright*, 251 F.R.D. 3, 10 (D.D.C. 2008) (holding that if the mere possibility that relevant information exists through present does not justify an open-ended temporal limitation, because otherwise "there could never be an end point for discovery requests absent some cataclysmic event that foreclosed the ability of human interaction").  By comparison, Defendants' proposal for a 2024 cut-off, which includes one year after Plaintiffs filed this lawsuit, is consistent with the case law establishing temporal limitations in statutory discrimination claims and is also more workable as a practical matter.

of the additional claims in *Provost*, consolidating the cases would not aid case management or judicial efficiency."). Permitting discovery into the guaranteed loan program would thus thwart the efficiencies that cut against consolidation. And of course, to the extent USDA is required to defend individual guaranteed loan decisions—for which FSA officials apply a different handbook and apply differing regulations and FSA criteria from that of the direct loan program— each claim will also involve third-party discovery from the banks that are USDA's clients in each guaranteed loan transaction. Accordingly, such overly broad and burdensome discovery into a program not even at issue in the Complaint over a 25-year period should be rejected.

(b) *County committees.* Similarly, Plaintiffs' Complaint does not mention the county committee system, much less include any allegations of discrimination by any county committee member against Plaintiffs. Nor are county committees even involved in administering USDA's direct loan program. *See generall*y Compl., ECF No. 1; *see also* Order at 5, ECF No. 52. Here too, Plaintiffs' requested discovery seeks to blur the line between this case and *Provost*, where those plaintiffs have alleged claim(s) related to the conduct of a single county committee member in Louisiana (and which USDA has moved to dismiss on grounds that were not considered by this Court in ruling on the Pride motion to dismiss). The minimal relevance, if any, of the requested information is therefore outweighed by the burden compliance would place on Defendants, and discovery (including proposed search terms concerning the county committees) would be disproportionate to the needs of this case.

(c) *Discrimination Financial Assistance Program ("DFAP").* At the outset, Plaintiffs' Complaint does not contain any claims challenging DFAP. That program—which was administered by multiple third parties and a National Administrator—provided financial assistance to any eligible person (not just members of the putative class here) who experienced alleged discrimination prior to 2021. Because there was no back-end time limit for the program, the overwhelming majority of DFAP claims concern occurrences well outside of the applicable statute of limitations in this case, and far outside of any reasonable temporal limitation. In addition, DFAP covered all of USDA's loan programs across the country, exceeding the bounds of relevant information for purposes of Plaintiffs' claims as stated in the Complaint. In addition, because DFAP was a non-adversarial financial assistance program that applied different standards than ECOA, with a lesser standard of proof than a preponderance of the evidence, recipients of financial assistance do not necessarily reflect a valid claim of discrimination under ECOA. *See* DFAP Validation Review Guide at 5 ("DFAP is a financial assistance program and is not intended to serve as a determination or admission of liability under the Equal Credit Opportunity Act or any other federal or state law. USDA does not make any findings of discrimination in the DFAP program, does not perform investigations or adjudications of claims, and does not issue decisions."). Thus, any claims for financial assistance under DFAP, and the underlying attendant data that

Plaintiffs are seeking, have very little relevance to Plaintiffs' ECOA claims here—making discovery into this unrelated USDA program vastly disproportionate to the needs of this case.

(d) *ARPA-related discovery*.  Plaintiffs' request for ARPA-related discovery—including discovery relating to expert work conducted in an ARPA-related case, *Miller v. Vilsack*, 21-cv-595-O (N.D. Tex.)—is improper for several reasons.

Enacted by Congress in 2021, ARPA was created as separate and distinct from USDA's direct loan program, and thus has limited, if any, relevance here.  For context, ARPA appropriated funds to USDA and directed the Secretary to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021," to pay off qualifying Farm Service Agency ("FSA") loans.  ARPA, Pub. L. No. 117-2, § 1005 (2021); *see also Miller v. Vilsack,* Civil Action No. 4:21-cv-0595-O, 2021 WL 11115194, at *11 (N.D. Tex. July 1, 2021).  *See also Miller*, 2021 WL 11115194, at *11 (holding ARPA was "overinclusive" because "the program provides debt relief to individuals who may never have experienced discrimination or pandemic-related hardship").  ARPA was enjoined before it was implemented, and Congress eventually repealed the statute as part of the Inflation Reduction Act.  *See* Joint Status Report regarding repeal, ECF No. 235, *Miller v. Vilsack,* Civil Action No. 4:21-cv-0595-O 11 (N.D. Tex.).

Plaintiffs' request that Defendants conduct discovery into the discovery in *Miller*, including document discovery and depositions pertaining to USDA's defensive expert in that case, Dr. Alicia Robb, likewise has minimal relevance, if any, to this case.  Rather, such discovery would implicate clearly privileged materials,[6] provide a backdoor into matters untethered to any reasonable temporal or geographic limitation, and overwhelmingly serve to confuse the material issues.[7]  That those ARPA-related claims and defenses cut across USDA's loan programs and otherwise failed to include ECOA claims or a five-year statute of limitations underscore the minimal relevance of such discovery upon discovery.  Indeed, the scope of those ARPA claims raise significant doubt as to whether such information encompasses the decisionmakers involved in

---

[6] Plaintiffs indicated that they would only seek non-privileged materials: the expert report filed on the public docket, and the materials upon which the experts relied.  Defendants have no privilege objection if Plaintiffs' request is so limited.

[7] Defendants also note that at the Initial Scheduling Conference, Plaintiffs raised the possibility of deposing Dr. Alicia Robb, who served as an expert for USDA in *Miller v. Vilsack*, 21-cv-595-O (N.D. Tex.).  *See* Tr. 37:7–:20.  Defendants anticipate resisting any proposed deposition of Dr. Robb for the reasons set forth above.

Plaintiffs' direct loan applications. Accordingly, discovery into the discovery in *Miller* is not proportional to the needs of this case and would inject volumes of irrelevant information into this case.

**(9)**    **Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

*Parties' Statement.* The parties filed their joint motion for ESI protocol on January 30, 2025. ECF No. 56. The Court granted that motion on February 3, 2025. ECF No. 59.

**(10)**    **Any issues about claims of privilege or of protection as to trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

*Parties' Statement.* The parties filed their joint motion for a Rule 502(d) order on January 30, 2025. ECF No. 56. The Court granted that motion on February 3, 2025. ECF No. 60.

**(11)**    **Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(2), should be modified, and whether and when depositions of experts should occur.**

*Parties' Statement.* The parties respectfully refer to and incorporate the agreed proposed scheduling order set forth in Section II(8)(a) of this Joint Report.

**(12)**    **In class actions, appropriate procedures for dealing with Rule 23, Fed. R. Civ. P. proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

*Parties' Statement.* The parties respectfully refer to and incorporate the agreed proposed scheduling order set forth in Section II(8)(a) of this Joint Report.

**(13)**    **Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

*Parties' Statement.* As set forth at the Initial Scheduling Conference held on February 13, 2025, discovery will be managed in phases, with an initial period of discovery tailored to enable the parties to brief class certification, with additional discovery, if any, to be addressed at a later stage. The parties' agreed proposed scheduling order is set forth above.

**(14)**    **The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

*Parties' Statement.* As shown in the parties' agreed proposed scheduling order in Section II(8)(a) above, the parties request that the Court allow the parties to file a joint status report with proposed deadlines for further proceedings, including for example, dispositive motions, the pretrial conference, and trial, within 50 days of the Court's decision on class certification to allow the parties to consider appellate or other options.

**(15)** **Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

*Parties' Statement.* As shown in the parties' agreed proposed scheduling order in Section II(8)(a) above, the parties request that the Court permit the parties to file a joint status report with proposed deadlines for further proceedings, including for example, dispositive motions, the pretrial conference, and trial, within 50 days of the Court's decision on class certification to allow the parties to consider appellate or other options.

**(16)** **Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

*Parties' Statement*. The parties have not identified any other matters that they believe should be included in the parties' agreed proposed scheduling order.

## III.    Additional Matters Discussed by the Parties Pursuant to FRCP 26(f)(3)

**(A) What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

*Parties' Statement.* The parties respectfully refer to and incorporate their response to Section II(7) above.

**(B) The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

*Parties' Statement.* The parties respectfully refer to and incorporate their response to Section II(8)(a) & (c) above.

**(C) Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

*Parties' Statement*. The parties respectfully refer to and incorporate their response to Section II(9) above.

**(D) Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims**

after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.

*Parties' Statement*.  The parties respectfully refer to and incorporate their response to Section II(10) above.

**(E) What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.**

*Parties' Statement*.  The parties respectfully refer to and incorporate their response to Section II(8)(b) above.

**(F) Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

*Parties' Statement*.  At this time, the parties have not identified any other orders that they believe the Court should issue under Rule 26(c) or under Rule 16(b) and (c).

## IV.   Proposed Scheduling Order

The parties have submitted an Agreed Proposed Scheduling Order, attached to this report as Exhibit A.

Dated: February 28, 2025                    Respectfully submitted,


                                            *s/ Colby Anne Kingsbury*
                                            Jessica C. Abrahams (DC # 435361)
                                            Anthony F. Jankoski (DC # 90022125)
                                            FAEGRE DRINKER BIDDLE & REATH LLP
                                            1500 K Street NW, Suite 1100
                                            Washington, DC 20005
                                            Tel: +1 202 230 5000
                                            Fax: +1 202 842 8465
                                            jessica.abrahams@faegredrinker.com
                                            anthony.jankoski@faegredrinker.com

                                            Craig S. Coleman (MN # 0325491) (Pro Hac Vice)
                                            Jonathan Dettmann (MN #0265032) (Pro Hac Vice)
                                            FAEGRE DRINKER BIDDLE & REATH LLP
                                            2200 Wells Fargo Center
                                            90 South Seventh Street
                                            Minneapolis, MN 55402

Tel: +1 612 766 7000
Fax: +1 612 766 1600
craig.coleman@faegredrinker.com
jon.dettmann@faegredrinker.com

Colby Anne Kingsbury (IL #6272842) (Pro Hac Vice)
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606
Tel: +1 312 569 1000
Fax: +1 312 569 3000
colby.kingsbury@faegredrinker.com

Gregg W. Mackuse (PA # 54366) (Pro Hac Vice)
Oderah C. Nwaeze (PA # 317991) (Pro Hac Vice)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Tel: +1 215 988 2700
Fax: +1 215 988 2757
gregg.mackuse@faegredrinker.com
oderah.nwaeze@faegredrinker.com

Emanuel McMiller (IN #35649-71) (Pro Hac Vice)
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Tel: +1 317 237 0300
Fax: +1 317 237 1000
manny.mcmiller@faegredrinker.com

John Calvin Patterson (MS #103140) (Pro Hac Vice)
Wesley D. Ehrhardt (MS # 103021) (Pro Hac Vice)
PATTERSON & EHRHARDT, PLLC
213 North Main St.
Como, MS 38619
Tel: +1 662 526 1992
Fax: +1 662 586 1556
jcp@pelaws.com
wde@pelaws.com

*Attorneys for Plaintiff*

*s/ Faith Lowry*

Faith Lowry
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs
1100 L Street NW
Washington, DC 20005
202-305-2532
Email: faith.e.lowry@usdoj.gov

Sarah Suwanda
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs
1100 L Street NW
Washington, DC 20005
202-305-3196
Email: sarah.m.suwanda@usdoj.gov

Elizabeth Brooke Layendecker
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs
1100 L Street NW
Washington, DC 20005
(202) 616-5046
Email: elizabeth.b.layendecker@usdoj.gov

*Attorneys for Defendants*